UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRUE FIT CORPORATION,<br><br>            Plaintiff,<br><br>v.<br><br>TRUE & CO.,<br><br>            Defendant. | Civil Action No. 12-CV-11006-GAO |

### DECLARATION OF ANDREW GERBER IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, Andrew Gerber, declare under penalty of perjury:

1.      I am an attorney with the law firm of Kilpatrick Townsend & Stockton, LLP, attorneys for Defendant True & Co. in this action. I am admitted to practice in the State of New York and have been admitted pro haec vice to appear in this action. I make this declaration, based upon my personal knowledge and my review of the publicly available documents annexed as exhibits hereto, in opposition to Plaintiff's Motion for a Preliminary Injunction.

2.      Paragraph 14 of the Complaint in this action alleges that Plaintiff True Fit Corporation ("True Fit") was formerly known as True Apparel Company ("True Apparel") and operated the website TrueJeans.com. According to paragraphs 16 and 18 of the non-confidential Affidavit of J. Romney Evans dated and filed July 13, 2012, True Apparel changed its name to True Fit Corporation in October 2007 and ceased use of Truejeans.com in November 2009. However, according to the Certificate of Amendment of Certificate of Incorporation Mr. Evans filed with the Delaware Secretary of State, True Apparel actually changes its name two years later, on October 21, 2009. A true and correct copy of the Certificate of Amendment is annexed as **Exhibit A.**

1

US2008 3689122 2

3. True Fit's Complaint and Motion for a Preliminary Injunction fail to disclose that, at the time it was doing business as True Apparel, it was sued in this Court for trademark infringement action arising out of its use of TRUE marks. In that prior action, True Fit made statements and admissions that are inconsistent with its positions in the instant case, as more fully described in paragraphs 4-16 below. Further, this Court (Douglas P. Woodlock, U.S.D.J.) has previously entered a permanent injunction on consent dated June 12, 2009 enjoining True Fit from any use of TRUE APPAREL, TRUE JEANS, any confusingly similar term and, unless approved in advance by the plaintiffs in that case, any term that includes "true" to promote its goods and services, as more fully described in paragraph 17 below.

4. Specifically, on or about December 18, 2007, True Religion Apparel, Inc. and GWW Denim, Inc. (collectively, "True Religion") filed a trademark infringement and unfair competition action against True Apparel in the U.S. District Court for The District of Massachusetts styled <u>True Religion Apparel, Inc. and Guru Denim, Inc.</u> v. <u>True Apparel Company</u>, 1:09-cv-11027-DPW (the "True Religion Action"). A true and correct copy of the docket sheet in the True Religion Action is attached as **Exhibit B**. The court filings in the True Religion Action annexed as **Exhibits C- O** are all true and correct print-outs of documents on public file that we printed out from the Court's ECF system.

5. The original complaint in the True Religion Action (Doc.1), filed on December 18, 2007 and attached as **Exhibit C**, alleged that True Apparel's use of the names and marks TRUE JEANS and TRUE APPAREL for an e-commerce site selling jeans was likely to create confusion with and dilute the plaintiffs' TRUE RELIGION marks.

6. On or about February 1, 2008, True Apparel filed its answer (Doc. 8), attached as **Exhibit D**, generally denying the allegations of the complaint in the True Religion Action.

7.  On or about March 4, 2008, True Religion filed a motion for a preliminary injunction in the True Religion Action (Doc. 11), attached as **Exhibit E**.

8.  On April 9, 2008, True Apparel filed Defendants' Memorandum In Opposition to Plaintiff's Motion For Preliminary Injunction (Doc. 21) in the True Religion Action; it amended that document on April 10, 2008 (Doc. 24); a copy of the Amended Memorandum is attached as **Exhibit F**. In its Memorandum, True Apparel made the following statements and admissions, among others:

> (a) "The term 'TRUE' is currently widely used in the fashion industry. There are scores of TRUE trademark registrations and pending applications on file with the United States Patent & Trademark office used in connection with clothing." True Apparel included a list of fourteen trademark registrations and applications for True variant marks, which, it explained, "is by no means exhaustive." (pp. 3-4.)
>
> (b) "True Jeans was selected as the ideal choice, as the trademark for True Jeans was available, the world 'true' best conveyed the company's fit technology and concept as it is synonymous with precision and accuracy, the slogan 'Find your True Fit' was preferred by the company, and Jeanetics [the other name under consideration] suggested an affiliation with a biotech company, rather than a technology-enabled retailer. In addition, as the consumer's challenge in selecting jeans is due to the lack of knowledge of his or her true size or true fit due to an absence of a standardized sizing system in the apparel industry, inclusion of 'true' in the trademark was a natural choice." (p. 5 footnotes omitted.)
>
> (c) "The only visual similarities between Plaintiff's and Defendant's marks are that they each contain two words and begin with the word TRUE. The word TRUE is a very

3

commonly-used word for trademarks in the fashion industry, including jeans. Words in common use in the marketplace condition consumers to more acutely distinguish between marks and reduce the likelihood of confusion." (pp. 8-9, footnotes omitted.)

(d) "The overall commercial impression that potential consumers get from the respective use of these marks is that TRUE JEANS relates to the fit of the jean, helping purchasers find the brand that accommodates their true fit. TRUE RELIGION, on the other hand, is a purveyor of glamorous, high-end fashion products." (p.11.)

(e) "Plaintiff has cited a single instance of purported actual confusion between the marks. Mr. Madden, a 12-year friend of Plaintiff's president, states that he received a Google™ Alert regarding TRUE APPAREL, which he is now unable to produce. Mr. Madden proffers as evidence of his confusion an email he received two weeks before the filing of Plaintiff's motion for preliminary injunction. Mr. Madden received this email after signing up for an account on the TRUE JEANS website and claims it confused him because he did not know if it was the same company where his friend works. The evidence is clear, however, that Mr. Madden did not mistakenly purchase jeans from TRUE JEANS, did not intend to purchase jeans, and was not a prospective consumer. There was no actual confusion." from pp. 11-12 of Ex. F (pp. 11-12, footnotes omitted.)

(f) "The strength of Plaintiff's mark is due to the word RELIGION . . . . The word TRUE is common in the apparel industry. Its frequent use conditions consumers to differentiate marks that use it." (p.13, footnote omitted.)

9. In opposition to True Religion's preliminary injunction motion, True Apparel also filed an affidavit of J. Romney Evans, the co-founder and CEO of True Apparel, dated and filed

April 9, 2008 (Doc. 23), a copy of which is attached as **Exhibit G**. In his April 9, 2008 affidavit, Mr. Evans makes the following statements and admissions under oath:

(a) "TrueJeans.com uses advanced technology to address the issue of fit online and to help customers find their 'true fit' and 'true size' to make the shopping experience easy and convenient." (¶7.)

(b) "This technology is very valuable to consumers who struggle to know what their 'true size' and 'true fit' are in an apparel industry void of standardized sizes…. Poor fit is the #1 reason for apparel returns.  Unsure fit is the #1 reason customers are hesitant to purchase jeans and apparel on line." (¶6.)

(c) Mr. Romney lists forty "apparel companies who use the word 'true' in their mark" including, among many others, TRUE MATCH, ONE TRUE FIT, TRUE and TRUE COMFORT. (¶17.)

(d) He identifies four companies that had booths at apparel trade shows with True in their names -- True Religion Brand Jeans, True Rebel, True People, and True Love and False Idols – and observes "[t]his illustrates the state of the environment in the apparel industry in which we operate, where consumers distinguish the differences between apparel brands based on often subtle differences in the trade names used by these companies." (¶18.)

(e) He explains how damaging the entry of preliminary injunction can be to an e-commerce apparel retailer: "If this preliminary injunction is granted, our business would come to an immediate stop.  Consumers would not be able to find our website because we would be forced to change the URL.  The outpouring of consumer satisfaction and interest in True Jeans could grind to a halt because our name and website would have to

be completely changed. It would take months, if not years, to recapture even a fraction of our prominence. The apparel industry is extremely fast-moving, and it is probable that we could not regain our present success. Consumers would be deprived of the benefit of using our fit technology because we would be difficult to find. Our investors would be very disappointed, and we undoubtedly would have difficulty in raising more money to support our business. It could mean the end of our business." (¶28.)

10.  On April 9, 2008, True Apparel also filed an affidavit of Jessica Arredondo, co-founder and President of True Apparel, in opposition to True Religion's preliminary injunction motion (Doc. 22 ), attached as **Exhibit H**. In her affidavit, Ms. Arredondo makes the following statements and admissions, among others, under oath:

(a) "We thought True Jeans would be an ideal name for our company since our company uses technology to match shoppers to jeans and apparel that best fit their unique bodies, and since, at the core of this problem, is the consumer's challenge of knowing his or her 'true size' or 'true fit' due to the fact that there are no standard sizes in the apparel industry. Furthermore, the fit problem is magnified due to the practice of 'vanity sizing' whereby apparel designers systematically assign smaller sizes to garments to flatter their customers into believing they are smaller than they really are. Finally, because the word 'true' is synonymous with precision and accuracy, we felt that the name True Jeans best conveyed our technology's intent which is to match customers to their best and most accurate fit." (¶8.)

(b) Ms. Arredondo corroborates that other apparel companies True Apparel had encountered at trade shows use TRUE in their names (¶14.)

US2008 3689122 2

11. Judge Woodlock conducted a preliminary injunction hearing in the True Religion Action on May 2, 2008, and the transcript (Doc.190) is attached as **Exhibit I**. Judge Woodlock denied the motion from the bench except to the degree that he required True Apparel to post a disclaimer on its marketing materials stating that it was not associated with True Religion (**Exhibit I,** pp. 28-29). Both parties there were selling jeans, and Judge Woodlock also observed: "I am concerned about the defendant's intent in adopting its mark.... That they introduced a meta tag that actually used 'True Religion' suggests to me that they were not innocents in this area and were prepared to piggyback on somebody else's name." (p. 32).

12. In denying the preliminary injunction motion against True Apparel in the True Religion Action, Judge Woodlock accepted True Apparel's contentions on the following points that are pertinent to the case at bar:

    a. With respect to the similarity of the marks, "there are distinctions here. There are uses of the word, 'True,' and [sic] other similar kinds of apparel settings, and I cannot say that there is such similarity here, as to make this an important factor in showing the likelihood of confusion..." (**Exhibit I,** p. 29);

    b. With respect to the marketing of the products, "[t]he advertising is done, it would appear, for the ultimate products in the same channels, and, there, the important difference in the way in which there is, what I'll call, 'a business plan,' for True Religion and True Jeans is important, because the marketing for the brands of what True Jeans is representing is the same, but one step removed, and, consequently, I don't find that that relationship between the marketing for the ultimate good necessarily will lead to a likelihood of confusion here." (pp. 30-31);

    c. "The evidence of actual confusion [from a friend of the owner of True Religion] is modest, and, while I'm not making any larger credibility determinations, not the kind of thing that I would find overwhelming." (pp. 31, 11-12);

    d. "With respect to the strength of the plaintiff's mark [TRUE RELIGION], it has some strength, but it's cabined by the use of similar names throughout the garment industry and, even, down to the jean industry." (p. 32);

    e. With respect to likelihood of confusion, "there are mixed findings on a preliminary basis, with respect to the five considerations, but the mixed findings ultimately lead to the conclusions that I cannot say there is, at this stage, a likelihood of success on the merits for trademark or trade name infringement, and the burden, at this stage, rests with the plaintiff to satisfy me." (pp. 32-33);

    f. "[S]uch harm as may befall the plaintiff here is outweighed by the harm that would fall—befall—the defendants, if I were to impose an injunction…" (p. 33);

    g. With respect to the public interest, "[c]ertainly, people's intellectual property and good name that is embodied in trademark is entitled to protection, but, equally, there is a value in vigorous competition, and, simply by adopting what is a generic set of terms, like, 'True,' and, 'Apparel,' a marketer and manufacturer, like True Religion, can't occupy the filed fully." (p. 34).

13. In an Affidavit of Romney Evans dated November 13, 2008 (Doc. 58), filed on November 14, 2008 in the True Religion Action and attached as **Exhibit J**, Mr. Evans averred in Paragraph 7(d) that "True Jeans is not a common or generic name. Each term on its own is common or generic, but the descriptive combination of True + Jeans describes or alludes to True

Jeans' shopping experience, the software which predicts best fit (true fit and true size), and describes the <u>result</u> of using the True Jeans' service." (Emphasis in original.)

    14.    On January 12, 2009, True Apparel filed a Memorandum In Support of Defendant's Motion for Summary Judgment in the True Religion Action (Doc.79), attached as **Exhibit K**. True Apparel stated, *inter alia:*

    a.  "Trademark rights . . . are not based on registration but on prior use – that is, 'the one who first uses the marks in connection with a peculiar [sic] line of business." <u>Volkswagenwerk Aktiengesellshaft v. Wheeler</u>, 814 F.2d 812, 815 (1st Cir. 1987)." (p. 1)

    b.  "Both 'true' and 'jeans' are generic or descriptive terms and are generally unprotectable absent secondary meaning. <u>S.S. Kresge Company v. United Factory Outlet, Inc.</u>, 598 F.2d 694, 696 (1st Cir. 1979) Where multiple brands include the terms 'true' and/or 'jeans,' the likelihood of injury is reduced. *Id.* at 697." (p. 3.)

    15.    In the course of the True Religion Action, to support its arguments that True Religion's marks were weak due to the prevalence of other TRUE marks in the marketplace, True Apparel relied upon third party uses of and applications and registrations for TRUE marks, including those collected in the Affidavit of Counsel, Susan G. L. Glovksy, In Support of Plaintiffs' Motion to Preclude Evidence of "True" Marks dated and filed February 17, 2009 (Doc. 126) and attached as **Exhibit L**, and the Affidavit of Robert S. Wolfe, Esq. (Part 4) dated February 19, 2009 and filed February 20, 2009 (Doc. 139), annexed as **Exhibit M**. True Apparel specifically identified the mark ONE TRUE FIT as a mark in use by Lee for selling jeans and acknowledged that a trademark application for that mark was filed on February 5, 2003 and a trademark registration issued for that mark on October 12, 2004 (**Exhibit L**, Doc. 126-4 at p. 6

of 10, Doc. 126-6 at p. 4 of 7; **Exhibit M**, Doc. 139-2). Those dates predate the launch of truejeans.com and the formation of True Apparel, according to the affidavit of its co-founder J. Romney Evans. *See* **Exhibit F** ¶¶13-15.

16. On March 4, 2009, True Apparel submitted in the True Religion Action an Affidavit of J. Romney Evans dated February 26, 2009 (Doc. 157); that affidavit is not available on the ECF system, but certain publicly available exhibits to that affidavit (included in Docs. 157-3 to 157-5) are attached as **Exhibit N.** These exhibits include various True Apparel marketing materials that make descriptive use of the phrase "true fit," including "truejeans is trying on hundreds of jeans for you, to find your true fit," "we are excited to help you find your *true* fit," "a true fit for your true love," "follow your heart to your true fit," and "a true gift…a true fit…for your love" (Docs. 157-3 at pp. 6 and 13 of 13; 157-4 at p. 14 of 16; 157-5 at pp. 2 and 7 of 21).

17. On June 15, 2009, the Court entered a Consent Judgment in the True Religion Action (Doc. 189), attached as **Exhibit O.** Under the terms of the Consent Judgment, True Apparel acknowledged that True Religion owned numerous valid and subsisting trademarks incorporating the term TRUE; agreed that True Apparel's use of TRUE APPAREL and TRUE JEANS infringed upon True Religion's prior rights; and was permanently enjoined from any use of TRUE JEANS, TRUE APPAREL, any confusingly similar term and, except as may be approved in advance by True Religion, any term that includes the words 'true,' 'religion' or 'apparel' to promote its goods and services" including in trade names and domain names (¶ 5).

18. True Fit has not submitted any evidence on the instant motion that it obtained True Religion's advance approval for any of the TRUE-variant marks it claims to own in the case at bar.

10

19. According to the Complaint and Affidavit of J. Romney Evans dated July 13, 2012 in this action, True Fit changed its business model following the entry of the permanent injunction in the True Religion action. It has ceased use of truejeans.com (as it was compelled to do by the Consent Judgment) and no longer operates "its own former direct-to-consumer online website, MyTrueFite.com (formerly TrueJeans.com and True Apparel Company)" (Evans Dec. ¶¶14, 16-18, 20). True Fit now describes itself as "a global leader in fit personalization services for matching buyers to apparel and footwear" employing sophisticated software that "deploys a variety of patented and proprietary algorithms to analyze massive amounts of data from the user's profile, shopping behavior, catalog of products and a variety of other robust data inputs to deliver highly personalized file and size recommendations in real time." (Complaint ¶10.) It alleges that it currently provides its services "to several leading retailers" (Complaint ¶14.)

20. The Complaint in this action references Plaintiff's "former direct-to-consumer site MyTrueFit.com" (¶14). I have visited that site, which now redirects to TrueFit.com, but the only page I could access is the home page shown in **Exhibit P**. I did not find any direct to consumer sites associated with the Plaintiff when I entered each of the marks alleged in Paragraphs 12-13 of the Complaint as search terms in the Google Search Engine.

21. On July 13, 2012, True Fit filed a Confidential Declaration of J. Romney Evans dated July 12, 2012 under seal. Although True Fit has never sought or obtained a protective order from the Court, it has advised us that we must treat the declaration as "Attorney's Eyes Only" and rejected our request to share the document with our client. True and correct copies of e-mail correspondence between counsel on this issue are attached as **Exhibit Q**.

US2008 3689122 2

Signed under pains and penalties of perjury this 27th day of July, 2012.

New York, New York

_____
ANDREW GERBER

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 27, 2012.

/s/ Gerard A. Butler, Jr.
Gerard A. Butler, Jr.
BBO no. 557176