UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11006-GAO

TRUE FIT CORP.,
Plaintiff,

v.

TRUE & CO.,
Defendant.

OPINION AND ORDER
March 4, 2013

O'TOOLE, D.J.

The plaintiff, True Fit Corporation ("True Fit"), has sued the defendant, True & Co., for trademark infringement and has moved for a preliminary injunction barring True & Co. from using any marks containing the word "true" in connection with personalized fit matching software and services.

**I.      Background**

The following facts emerge from the parties' submissions. The plaintiff True Fit was founded in 2005, originally under the name True Apparel Company, as a company providing a software service to help retail consumers find jeans that fit them well. The service was offered through a website, www.truejeans.com, where a consumer could enter personal information such as measurements and body type, and the system's algorithm would then show several pairs of jeans that would fit the consumer well. In late 2009, True Apparel changed its name to True Fit Corporation and began operating the website www.mytruefit.com, which provided a substantially identical service as its former website.

In 2011, True Fit stopped running its own direct-to-consumer website and began


providing its services through e-commerce retail partners, such as Macy's and Nordstrom. In October 2011, True Fit launched its first partner site service through Macy's Denim Finder. It launched its services on Nordstrom's website in March 2012. In each case, Macy's and Nordstrom customers are invited to create a TRUE FIT profile, which is then used to provide fitting information and ratings for various items of apparel.

The defendant True & Co. was formed in the fall of 2011 as an e-commerce lingerie retailer, providing women with a new way to shop for bras from home. Between September and December 2011, the company considered various trade and domain names, registering braandco.com, yourtruefit.com, and trueandco.com in the process. The company at first did business as Bra & Co. but formally incorporated as True & Co. in March 2012.

On May 18, 2012, True Fit sent a cease and desist letter to True & Co., contending that True & Co.'s use of the TRUEFIT mark, the YOUR TRUE FIT slogan, and various other "TRUE-containing marks" was infringing and should cease immediately. True & Co. officially launched its website, www.trueandco.com, on May 30, 2012, having removed its TRUEFIT mark and the YOUR TRUE FIT slogan but otherwise maintaining its use of the word "true."

## II. Preliminary Injunction Standard

The grant of a preliminary injunction is an "extraordinary and drastic remedy." Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). Therefore, "a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Although all four factors must be considered, in a trademark case

"the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).

### III.     Likelihood of Success on the Merits

In order to obtain a preliminary injunction, True Fit must show a likelihood of success in proving (1) that its marks merit protection, and (2) that True & Co.'s alleged infringement is likely to cause consumer confusion. See id. at 116.

#### A.     Validity of Marks

True Fit claims ownership of both registered and unregistered marks. The following marks are federally registered:

- FIND YOUR TRUE FIT
- TRUE FIT
- TRUING UP
- TRUED
- TRUE TO YOU
- SHOP TRUE TO YOU
- BROWSE AND BUY. TRUE TO YOU.

The following marks are not registered:

- BE TRUE. SHARE TRUE.
- TRUE UP
- TRUE FIT BRAND ACCELERATOR
- TRUE FIT RECOMMENDATION ENGINE
- TRUE FIT SIZE
- TRUE FIT SCORE
- MY TRUE FIT

Marks are entitled to protection only if they are distinctive. See Operation Able of Greater Boston, Inc. v. Nat'l Able Network, Inc., 646 F. Supp. 2d 166, 171 (D. Mass. 2009). Marks that are descriptive, rather than suggestive, arbitrary, or fanciful, are protectable "only if they acquire 'secondary meaning' by 'becoming associated with a single commercial source.'"

Id. (citations omitted).

### *1.   Distinctiveness*

True Fit argues that its marks are suggestive, not descriptive, because imagination is necessary to draw a connection between the word "true" and the nature of True Fit's personalized fit services. This is like saying that the phrase "good food" is suggestive rather than descriptive, because it takes imagination to appreciate what it is the chef does to make the food taste good. The argument ignores the common meaning of "true" and its frequent use in conjunction with fitting and sizing. The phrase "true fit" describes what the plaintiff's software does: it helps a person pick a garment that is the person's best fit, that is, his or her "true" fit. The marks convey "an immediate idea of the . . . qualities or characteristics of the goods," [or services]. Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995), and are properly regarded as descriptive.

Regarding its registered marks, however, True Fit argues that when "the PTO registers a mark without first requiring the applicant to prove secondary meaning, the holder of the mark is entitled 'to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive.'" Borinquen Biscuit, 443 F.3d at 117 (citations omitted). The presumption of trademark validity is conclusive only where the registered mark has gained incontestable status – which requires five years of continuous use under 37 U.S.C. § 1065 – and "a putative infringer may defend a suit on the ground that [a contestable] mark does not merit protection because it is not inherently distinctive . . . but, rather, is merely descriptive of the product." Id. Therefore, when a registered mark is contestable, as the plaintiff's are here, a putative infringer may show by a preponderance of the evidence that the mark is descriptive. See id. at 118.

To make that showing, True & Co. points to examples of True Fit using the registered

marks, particularly TRUE FIT, as descriptive terms. (Decl. of Andrew Gerber in Opp'n to Pl.'s Mot. for a Prelim. Inj. (dkt. no. 29-14).) While doing business as True Apparel, True Fit posted statements on its website like, "truejeans is trying on hundreds of jeans for you, to find your true fit," and "We are excited to help you find your true fit." (Id.) True & Co. also provides numerous examples of third parties using the word "true" or "true fit" in connection with fitting and sizing for various products, particularly apparel. (Decl. of Olivia Harris in Opp'n to Pl.'s Mot. for a Prelim. Inj. (dkt. no. 30-2, 30-3).) True Fit has argued in its briefing and in oral argument that these examples, especially those related to the sale of apparel, are meaningless because they are not specifically related to personalized fit matching services. Perhaps it is the case, as True Fit alleges, that no company that provides fit matching services via an online questionnaire and a sophisticated algorithm uses the word "true" as part of a mark. But company after company has used the word "true" and the phrase "true fit" in conjunction with fitting and sizing. The word "true" has become commonplace among both retailers and consumers when referring to fitting and sizing; as True & Co. has shown through various exhibits, online shoppers routinely search for items that will be a "true fit" or "true to size."

True & Co. has carried its burden of proving by a preponderance of the evidence that True Fit's registered marks are descriptive, rather than suggestive. Therefore, they must have acquired secondary meaning to be protectable.

### 2. *Secondary Meaning*

"Proof of secondary meaning entails vigorous evidentiary requirements." Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc., 9 F.3d 175, 181 (1st Cir. 1993). The movant must show that "a significant quantity of the consuming public understand the name as referring exclusively to the appropriate party." President & Trs. of Colby Coll. v. Colby Coll.-N.H., 508

F.2d 804, 807 (1st Cir. 1975).

> To acquire a secondary meaning in the minds of the buying public, a labeled product, when shown to a prospective customer, must prompt the reaction, "That is the product I want because I know that all products with that label come from a single source and have the same level of quality." In other words, the article must proclaim its identity of source and quality, and not serve simply to stimulate further enquiry about it.

Flynn v. AK Peters, Ltd., 377 F.3d 13, 20 (1st Cir. 2004) (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:11 (4th ed. 2004)). In making a showing of secondary meaning, the plaintiff may provide either direct or circumstantial evidence. Id. True Fit has not provided any direct evidence, but it rather relies on circumstantial evidence regarding "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." Id. True Fit claims that it has been using its TRUE marks since 2005 and that it has invested significant resources into advertising and branding. It also notes that its retail partners, Macy's and Nordstrom, have been promoting the TRUE marks to thousands of customers and also include various TRUE marks as True Fit's intellectual property in their "terms of use."

True Fit's circumstantial evidence of secondary meaning is weak. First, the only mark that has been consistently in use since 2005 is FIND YOUR TRUE FIT. The other marks, perhaps with the exception of TRUE FIT and TRUE TO YOU, have been used, if at all, with much less regularity and visibility. It is implausible that a significant portion of the relevant consumer population would regard the use of BROWSE AND BUY. TRUE TO YOU. or TRUING UP as indication that True Fit Corporation was the source of the service provided. Moreover, Macy's and Nordstrom use only a few of the plaintiff's marks. The only marks that Macy's has prominently displayed are FIND YOUR TRUE FIT, TRUE FIT, and TRUE TO

6

YOU, whereas Nordstrom conspicuously displays only the TRUE FIT mark on its website.

True Fit also claims ownership of a "family of TRUE marks," similar to the "Mc" mark that precedes the names of McDonald's food items. However, as the Federal Circuit stated in J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460, 1462 (Fed. Cir. 1991):

> A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner. Simply using a series of similar marks does not of itself establish the existence of a family. There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods.

Here, True Fit has failed to show that the public associates the word "true" used in connection with apparel fitting services as indicating a common origin. The analogy to McDonald's made-up product names is inapposite, and True Fit's marks should be evaluated independently, rather than as a "family."

In light of the above considerations, the only marks that have any likelihood of secondary meaning are FIND YOUR TRUE FIT, TRUE FIT, and TRUE TO YOU. The remaining marks are neither distinctive, nor have they acquired secondary meaning and are therefore unprotectable.

### B.   Likelihood of Consumer Confusion

In evaluating the likelihood of consumer confusion in trademark cases, courts in the First Circuit use the eight-factor test identified in Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482 (1st Cir. 1981). The factors are as follows:

> the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark.

Id. at 487.

*1.     Similarity of Marks*

The similarity of marks "is determined on the basis of the total effect of the designation, rather than a comparison of individual features." Pignons, 657 F.2d at 487 (quotations omitted). "Some of the factors that courts have considered when assessing the similarity of the marks are the phonetics, font, design, layout, color scheme, total number of words and syllables, spelling and pronunciation." Nat'l Fire Prot. Ass'n, Inc. v. Int'l Code Council, Inc., No. 03-10848, 2006 WL 839501 (D. Mass. Mar. 29, 2006). Here, the parties' marks are similar only in that they include the word "true." Otherwise, the total effects of the marks, considering their designs, fonts, and color schemes, are substantially different. True Fit uses a sans serif font for each of its marks that may merit protection (i.e., FIND YOUR TRUE FIT, TRUE FIT, and TRUE TO YOU). These marks, as they appear on the websites of Macy's, Nordstrom, and True Fit itself, are typically used with a color scheme containing dark gray, white, and a shade of red. True Fit often uses a red square block with a white letter "T" as part of its marks. In contrast, True & Co.'s mark employs a significantly different aesthetic. The design mark, containing intersecting geometrical shapes which border and accent the word "TRUE" in serif typeface, gives a total effect that is quite dissimilar from True Fit's marks. True Fit's argument that the marks are similar because the "dominant" portion, namely the word "true," is identical is unpersuasive. This factor favors True & Co.

*2.     Similarity of Services*

The concern here is the extent to which the parties' services are "related in the minds of the public." N. Light Tech. v. N. Lights Club, 97 F. Supp. 2d 96, 111 (D. Mass. 2000) (citations omitted). The two companies' services are similar in that they assist online shoppers in finding the right fit by filling out an online quiz that does not rely on measurements. However, this is

where the similarities end. True Fit currently offers its services only for denim and selected other apparel, not including lingerie, whereas True & Co. offers fitting services primarily for lingerie and incidentally for sleepwear. The disparate categories of apparel minimize the likelihood that the public sees the parties' services as related. True Fit's intent to enter the lingerie market in the future does not support a likelihood of confusion. See Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc., 828 F. Supp. 2d 384, 394 (D. Mass. 2010).

Furthermore, True & Co. employs an unconventional item selection and pricing structure. Customers are directed to choose three bras that have been shown to fit them well, and a stylist then chooses two additional bras. Customers pay a refundable deposit for the five items and are subsequently charged for only the items that they keep. In contrast, True Fit's services are limited to fitting, and Macy's and Nordstrom facilitate the rest of the transaction, notably in a very ordinary manner. The novelty of True & Co.'s services limits the likelihood of confusion.

In light of these differences, it cannot be concluded that these services are related in the minds of the public simply because they involve the use of fitting technology. This factor favors the defendant.

### 3. Channels of Trade, Advertising, Classes of Prospective Purchasers, and Strength of Plaintiff's Marks

True Fit and True & Co. both use the Internet to provide their services. However,

> . . . in the Twenty-First Century, the Internet has become the venue for the advertising and sale of all manner of goods and services. That the goods or services of the parties are both found on the Internet proves little, if anything, about the likelihood that consumers will confuse similar marks used on such goods or services.

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:53.50 (4th ed. 2004). True Fit's software can be accessed only through retailers' websites, whereas True & Co.

operates its own website. Both companies advertise via the Internet, magazines, and television, but True Fit primarily advertises to businesses, and True & Co. advertises exclusively to consumers. The messaging and marketing strategies differ in that True Fit emphasizes technology and innovation, while True & Co. emphasizes a new bra shopping "experience." Also, True Fit's sole paying customers are businesses, whereas True & Co.'s sole paying customers are individual shoppers.

The channels of trade are clearly distinct. Consumers often use True Fit's services because they have chosen to shop at Macy's or Nordstrom, not because they have any prior knowledge of True Fit. In contrast, it is extremely unlikely that a consumer will end up at True & Co.'s website unknowingly. Because of True Fit's channel of trade, its marks are weak and have little recognizability in the Internet retail marketplace. It is highly likely that a consumer will use True Fit's services unwittingly and come away with the understanding that Macy's or Nordstrom is the source of the services. True Fit's contention that it has used its marks for over five years and has put great effort into building its reputation in the personalized fit service industry is unconvincing. It was not until late 2009 that True Fit changed its name from True Apparel and began using the phrase "true fit" non-descriptively.

The parties' advertising is substantially different, particularly when considering the sophistication of the customers, who are primarily female online shoppers.[1] See Q Division, 2000 WL 294875 at *4 ("The mere fact that products may be sold or advertised in similar environments to similar customers does not lead forthwith to a conclusion redounding in the plaintiff's favor . . . . A further examination is required of the sophistication of the customers and the manner in which trade is conducted."). These shoppers may range in sophistication, but

---

[1] Macy's also offers True Fit's services for men's denim, but True & Co. does not offer any services for men.

women who shop online are likely to be more sophisticated and more aware of the nuances of marketing and e-commerce than the average consumer. For example, these customers are likely to notice that True Fit is always advertised in conjunction with a major retailer, whereas True & Co. advertises only its own website.

True Fit also contends that the parties target exactly the same class of prospective purchasers. This is technically untrue, as True Fit only sells its services to businesses. However, the consumers who use True Fit's services may very well be the same consumers who shop on True & Co.'s website. The very same woman could purchase jeans from Macy's online, with the assistance of True Fit's services, and purchase bras from True & Co. This factor may favor True Fit, but the other three factors favor True & Co.

    *4.*    *Actual Confusion*

True Fit's evidence of actual consumer confusion, a single call made by a non-customer who was "initially confused," is weak and deserves little attention. (See Pl.'s Mem. in Supp. 13 (dkt. no. 14); Decl. of J. Romney Evans 10 (dkt. no. 15).) This factor weighs in True & Co.'s favor.

    *5.*    *Defendant's Intent in Adopting Its Mark*

True Fit has argued extensively about True & Co.'s alleged bad faith in adopting its mark. According to True Fit, the timeline of events makes obvious True & Co.'s intent to benefit from True Fit's goodwill. True Fit alleges that True & Co.'s CEO decided to change the company's name from Bra & Co. to True & Co. only after visiting True Fit's and Macy's websites. Further, True & Co. launched its official website a few weeks after receiving a cease and desist letter from True Fit, foregoing an opportunity to choose a new, non-infringing name.

However, the evidence shows that True & Co. registered the domain names

yourtruefit.com and trueandco.com before it was aware of True Fit's marks. True & Co. claims that once it chose the True & Co. mark, it updated its website and attempted to remove all TRUEFIT references. True & Co. also asserts that it did not act in bad faith by continuing the use of the word "true" because it did not believe that such use was infringing. In view of the sequence of events, True Fit has failed to provide proof that True & Co. "intended to capitalize on [True Fit's] reputation/goodwill and confusion between the marks." Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc., 828 F. Supp. 2d 384, 395 (D. Mass. 2010). This factor is neutral.

In sum, seven of the eight factors weigh in favor of True & Co. There is negligible, if any, likelihood of confusion present, and True Fit is unlikely to succeed on the merits.

## IV.     Irreparable Harm

True Fit contends that it will suffer irreparable harm absent a preliminary injunction because it will lose control over its reputation and goodwill. "Irreparable injury in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Bear Republic Brewing Co. v. Cent. City Brewing Co., 716 F. Supp. 2d 134, 151-52 (D. Mass. 2010) (citations omitted). True Fit has not alleged sufficient facts to show irreparable harm. Its main factual allegation in support is that True & Co. has received negative attention because of its failure to timely process orders after its initial launch in the summer of 2012. True Fit offers no evidence of ongoing negative reviews about True & Co and fails to support its position that any injury sustained cannot be adequately compensated at a later time.

## V.      Balance of Hardships

True Fit has not shown that True & Co.'s activities have threatened or harmed True Fit's

reputation, goodwill, or market position in any way. However, if a preliminary injunction were to issue, True & Co. would have to completely rebrand its services, causing significant injury to its business. As True & Co. points out, a preliminary injunction would have an effect tantamount to that of a permanent injunction. The balance of hardships weighs in favor of True & Co.

**VI.    Public Interest**

"The public interest is best served by fair competition in the marketplace." Id. at 152. Although the "public interest is served by preventing consumer confusion," True Fit has failed to show a likelihood of success on the merits. Boathouse Group, Inc. v. TigerLogic Corp., 777 F. Supp. 2d 243, 254 (D. Mass. 2011). Therefore, a preliminary injunction would not serve the public interest.

**VII.   Conclusion**

For the foregoing reasons, the plaintiff's Motion for a Preliminary Injunction (dkt. no. 13) is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge